## Case No. 4,431.

ELY v. MONSON & B. MANUF'G CO.

[4 Fish. Pat. Cas. 64.][1]

Circuit Court, D. Massachusetts. Oct., 1860.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

B. R. Curtis, for complainant.

C. L. Woodbury, for defendants.

SPRAGUE, District Judge. This is an application for an injunction against the Monson and Brimfield Manufacturing Company, by Alfred B. Ely, assignee of Milton D. Whipple.

Affidavits have been filed; and the first question that is made, is as to the infringement of the patent of Mr. Whipple by the respondents.

The evidence of the infringement is the affidavit of the plaintiff himself to the bill; who does not speak from personal knowledge; and also, an affidavit filed with the bill, of a party who describes himself as fully competent as an expert, and who has examined the machines, and seen them used by the respondent, who swears that they are the same as used by the Middlesex Company;

which were involved in the trial of Whipple against that company; thus presenting facts that, prima facie, make out the case. There are other affidavits, not so direct and full, which tend also to the same result.

The respondent puts in one affidavit, made by defendant's agent, and that affidavit does not say what he uses; but says that they use a carding machine, with a burring cylinder in connection with it, which they bought of a manufacturer in New York or New Jersey, and that it is the same as is used by thousands; and he says essentially that it is not an infringement of Whipple's patent, and that it is a small part only of what he uses that is claimed by Whipple.

But the essential difficulty is that he does not state to the court what he does use, and that is a matter perfectly in his power. He can state what is the burring apparatus he uses, and can thus enable the court, by a comparison with the Whipple patent, to determine whether it is an infringement of that patent. He can see the affidavit of the plaintiff, filed with his bill, and he can say whether it is true; whether the machine he uses is the same as that in use by the Middlesex Company. He does not deny that it is the same. Now, where there is a charge of infringement, it is in the power of the party charged to bring into court the article that he uses, so that the court can see what he does use.

It is his duty to tell the court what he uses, and to describe it. But the defendant does not do this. He generally and vaguely says that it is not an infringement. That is a question the court has to decide on the facts, and he carefully avoids giving any facts in denial or avoidance of plaintiff's facts. And when plaintiff alleges that defendant uses a certain machine, which he describes, and defendant does not disprove or deny, it is an admission that he uses such a machine.

The court, therefore, thinks it is clearly made out, in this case, that there is an infringement—taking the Middlesex machine to be an infringement; and to that question the court may have occasion to advert hereafter. Besides, the affidavit of the expert—where the other party has such ample means to overcome it—must of itself be satisfactory: the question being what the defendant himself uses, and which he doubtless has the best means of showing to the court.

Then the question of the validity of this patent—the priority of invention—is brought into consideration. Well, there is, in the first place, the patent; and there is nothing in the affidavit of the respondent to meet it. There is a single affidavit on his part, but there is nothing in it to meet the patent. This affidavit does not set forth any prior invention, or describe any thing, or refer to any thing that anticipated Whipple's patent. And then, besides the patent itself, there are the various suits at law, as recited in the bill,

and some others. There are recited in the bill several suits at law.

The first was brought in this district, and the defendant was defaulted, and plaintiff had judgment and damages.

In the next place, there is the suit which was tried and went to a jury in this district, in which a verdict was rendered for the plaintiff. Then there was the trial in Connecticut before Judge Ingersoll (and it is said trials are had there by the court under the provisions of law), and he decided against the defendant in that case, and judgment was entered. There are two judgments, therefore, upon both trials; one before a jury, and one before a court in Connecticut, and prior to the trial in this district a year ago. That case was referred by the parties to a referee, and a full and elaborate trial was had, as the counsel knows, and a decision was given, and an award in favor of the plaintiff, and besides that a judgment on the award. Besides that, there was the case or suit defended by Sargeant, who, being himself an expert, submitted, and took a license from Whipple. Since that there have been various cases and applications for preliminary injunctions, submitted to by the parties; and recently, within a few days, a permanent injunction has been granted upon a final hearing before his honor, Judge Clifford; and against all this there is nothing, unless it is merely the affidavit of the agent of the respondent who denies the originality of the patent. The case, therefore, as to the infringement, and the originality of this patent, is made out very fully.

The only real question I have had at any time in this case, is whether there should be a peremptory injunction, or whether the parties should be permitted to proceed by giving bonds. That is the only question on which I have ever had any doubts; and strong views may be presented on both sides. The respondent says that all the rights of the complainant may be protected by a bond, without a peremptory and absolute injunction. In the first place, that pending the suit, what he may have the right to recover by way of damages, can be fully secured by bond; and that the means of ascertaining the amount of damages may be very easily secured by certain conditions imposed by the court; that it would be in the power of the court in granting a conditional injunction to impose the means of guaranteeing the security of the plaintiff. I do not see any difficulty in the court imposing such conditions as would give the plaintiff ample security.

In the next place, the defendant says he purchased the instrument he is using in the market before he was aware that the plaintiff set up any exclusive right; that he is going on with its use, and that it would be a great injury to him to desist from its use at the present time; that if he did so, he must shut up his establishment, turn his men out of employment, and that the expense of substi-

tuting another machine would be more than the value of the whole claim of the plaintiff; and he then presents a strong appeal to the court to permit him to go on, and use this machine. These considerations are very strong, and would be conclusive if the defendant could introduce one other element, and that is, any substantial doubt of the right of plaintiff.

If I should see in the case as presented, such a question as the court should say rendered it necessary that there should be further litigation, or rendered it expedient there should be further litigation, in order definitely to settle the rights of the parties, then I would not say that I should, during that litigation, disturb the defendant, provided he gave satisfactory security. But I think that is one of the elements that should be brought in; that if there is something to be tried, and counsel has urged it, then, while that something is in the process of being tried—pending the litigation—parties ought to be left in possession of what they are using.

Then we are brought to consider whether there is such a doubt that the court should say they should countenance further litigation, and withhold an injunction on the ground that it is expedient, wise, and proper that further litigation should be had. Is there any substantial defense?

In the first place, it is insisted that the defendant ought to have a trial by jury, and that is held as a constitutional right. The constitutional right of trial by jury in actions at common law is not denied; but this is not an action at common law: this is a suit in equity, and depends upon the discretion of the court.

If the court thinks there are matters of fact that would render it proper to send the case to a jury, he may send it to a jury; but even then, with the decision of a jury, it would not settle it finally. The finding of a jury is not conclusive; it only aids the court. It has not been the practice in this district to send questions to a jury in patent cases, or in any cases. The practice in England exists to a considerable extent; but it should be remembered that there are two classes of courts—the courts of common law and the courts of equity, both very distinct from each other; and when the chancellor sends a case for trial by a jury, he sends it to another court, for trial before another bench, because he has no jury in his court; and one reason is, that it is supposed that the judges in the courts of common law determine questions of law in patent cases, and the chancellor can have the aid of the opinions of the judges in the other courts, on questions of law, as well as the finding of the jury on the facts. But that is not our practice.

Now, what is the question of fact to be sent to a jury? I have not been informed in this case of one single question of fact which the defendant wishes to put to a jury. He wants to put the general question of infringement, and the general question of the validity of the patent; but does he mean to controvert that this defendant uses the instrument which it is said he uses? That is not stated even in argument; only he means to say that it would not be an infringement. But is that enlightening the court on any question of fact different from what has been repeatedly tried? There is not in the affidavit any statement of any question of fact different from those that have been repeatedly tried, either in regard to the question of infringement, or that of priority of invention, and repeatedly decided.

Now, in regard to the question of the validity of this patent, how many trials is the patentee to encounter before it is to be considered satisfactory to a court that his right is established? Here the trials have been going on for years up to the present time, even up to the present week; and every decision has been in favor of this patent, and establishing the rights of the patentee against the adverse use of this machine by other persons. I can not say that I see any substantial fact in this case that should be submitted to a jury; and therefore, if this case is to go on, there is nothing suggested which would induce me to send it to a jury. Why then should I act upon the supposition that it is to go to a jury? Now is the time for the defendant to present to the court sufficient considerations to induce the court to send the case to a jury. The defendant might have done this by affidavit, but this has not been done; and, upon this present showing, I might say I should not send the case to a jury on any such statements. It would be the weakest case that could possibly be imagined.

I have already referred to the trial that was had a year ago. Of course, the knowledge I acquired on that trial, which occupied some nine or ten days, enables me to speak with more certainty, in relation to what took place at that trial, than if I had not myself tried the case. Now the respondent has this advantage—he has the advantage of my opinion, both as to the law and the facts—the case being fully reported at the time. If, therefore, there was any substantial question of doubt—if any views then expressed were erroneous—the defendant could have pointed them out. All the matters both of law and of fact have been published; and the defendant has not set forth a single statement on which to ground an application, either for a trial by jury, or for delay in the present proceedings. It is said they want to go to the supreme court on questions of law. What questions of law? Not a single question has been suggested. The first case that was tried here and the charge of the court to the jury is in print, as also the case which was tried before the referee. They allege that they want to carry the case to the supreme court on a question of law, but they do not show me what is the question. But

how are they going to get any question of law before the supreme court? The damage does not amount to two thousand dollars, and the judge before whom it might be tried, must certify that there are questions of law to carry up in order to send the case to the supreme court—and, moreover, he must certify that these questions of law are grave and important. We do not send trifling questions to the supreme court. They must be grave and important questions. Now, so far from being able to say that there is a grave or important question, I can not say that there is any question at all. I can not see any question of law to carry up. I am really ignorant what question of law there is, that the learned counsel wishes to send to the supreme court. I have not heard a single doubt, as to the construction of the patent, or any question of law that the supreme court is to be called upon to decide. I can not, therefore, see why the case should be carried to the supreme court. Why, therefore, should the court say that it is expedient to countenance further litigation, in the face of all these facts to the contrary? I can not in any aspect in which the case has been presented here, see any sufficient reason to induce me to think that further litigation is necessary, in order to settle the rights of these parties satisfactorily.

Now, injunctions are granted both in England and in the United States when there are grave doubts, and are granted on condition that suits at law shall be brought to try some fact or title. We say in such case that the plaintiff has such a prima facie right that we will secure him in the present enjoyment of his right. But, in the meantime, there are such grave doubts, as will induce us to order him to bring the case before a court of law to decide those doubts. This being entirely a matter of discretion, it is for the court to say whether the rights of the plaintiff are so clear that he ought to be protected by injunction, or whether they are not so clear but that he may be made secure by sufficient guaranties by bond and security.

Now, if this were the only case of alleged infringement of this patent, there would be strong grounds for an application for an injunction. But it appears both in the hearing and indeed as set forth in the affidavit of the respondent, that there are a great many other cases. If the court is to allow one case to go on, for the same reasons, he may allow others to go on; and though the amount claimed in each case is not large; as to this complainant, who has already had his rights settled by various suits and courts of law, it would not seem just that he should be still under the necessity of meeting litigation in a great variety of cases, and of carrying on a great many suits at great expense, so that his patent should become of little or no value by reason of a multiplicity of actions.

I think, therefore, it is the duty of the court to protect the rights of the plaintiff by such means as they have, and by means of injunctions.

Subsequently, certain questions of law having been presented and argued, the court delivered a further opinion, as follows:

SPRAGUE, District Judge. A hearing has already been once had, and an opinion pronounced on this motion for a preliminary injunction. After that opinion was pronounced the counsel for the respondent desired time to present certain questions of law, and certain other evidence as to matters of fact. By consent of the counsel for the complainant time was allowed, and another hearing was had on the questions thus presented. All that remains is to consider the new matter that may have been presented on this second hearing.

I do not propose to repeat any thing that was said by me in giving the opinion on a former occasion. The new matters which are presented consist of new arguments presented, and new opinions of experts, and one affidavit, that of Mr. Baldwin, which I suppose was intended to present some new fact to the court, which I shall consider hereafter.

The points of law presented are objections to the construction of this patent, in the opinion which I gave as referee, and which has been printed. There are several exceptions which are presented to the construction of the patent. The first is the construction given as to the guard that is named in the plaintiff's patent; and it is said that it is erroneous, because the court allowed other guards to be named, as coming within the plaintiff's patent, than that specifically described by the plaintiff. The guard which he describes is a stationary guard. The guard used by the defendant in the Middlesex case is a rotary guard; and it is insisted that the construction given, declaring that the plaintiff's patent was such that a rotary guard might be an infringement of it, was an erroneous construction. In order to see whether or not it was an erroneous construction, we must look at the plaintiff's claim. It is the second claim in the patent that is in controversy on which the bill is founded. That claim is for forming and arranging certain teeth in a cylinder. Further, it is the forming and arranging them in a certain manner which is the limitation contained in the patent. It is not every arrangement, but a certain arrangement, which is claimed as new. What is that form and arrangement? They are to be so formed that the convex backs of the teeth shall be substantially concentric with the axis of the cylinder. That is one of them. Another requirement is, that they shall be so arranged as to present a surface on which the burr, or other material, not wool, is to be fastened so as to present it to the action

of the guard. These are the two requirements in the formation and arrangement of the teeth. Their backs are to be concentric with the axis of the cylinder, and they are to form a surface whereby a burr may be floated, and thus present a surface on which the guard is to act in removing it. It does not embrace the claim of a guard. What he claims is the forming and arrangement of teeth in a certain manner, and in describing it he says, they are to form a surface so that the guard will act upon them. He does not confine himself to a stationary guard. Any guard that will act thus on the teeth is substantially the same as the guard he names. Indeed, his invention, he says, consists in the forming and arranging of the teeth in the manner described; and if that invention can be used without a guard, it is using his invention. The fact that another patentee may dispense with part of his machine and use his invention, would not give him a right to use that invention.

The next ground of exception to the construction is, that in that opinion it is stated that the teeth are protected by the heels of the teeth that precede them, and it is insisted that they are not so protected; that is to say, that by the true construction of Whipple's patent the teeth would not be so protected. Well, in the first place, it is apparent that if the backs of the teeth are concentric, and the whole exterior surfaces of the teeth are concentric, then they must be protected, because, being at every point equidistant from the center, constituting a perfect circle in the rotation, they would be protected.

But it is insisted that there is another error in the opinion which says that these teeth are "substantially concentric," whereas it is insisted that they are not concentric; that is to say, that they are to be so constructed that they are not designed to be concentric, and a model was exhibited to prove this point. But whether somebody may have made an imperfect model is not the question.

In the first place the claim says, as an essential part of itself, that these teeth shall be substantially concentric, and how can it be an error of construction when that is the language of the patentee? Again, in the specification, it is said these teeth are to be concentric, and in the specification itself, it is stated to be an essential part of his invention that protection should be given to the points of the teeth by the heels of the preceding teeth, and how can it be said that it is an error of construction to say that that is a part of the plaintiff's patent? But it is said that in the consideration of the plaintiff's patent in the formation of the cylinder, it is apparent that the teeth will not be concentric, and that the back of one comb will not protect the points of the succeeding comb.

There are two modes named of forming a cylinder and teeth, in this respect: one by putting slips of paper under the edge that will raise the teeth; the other, by slightly filing off the backs of the preceding teeth. It is insisted that one of these modes will elevate them, so that they will not be substantially concentric. Suppose it was so, the other mode remains of making them, and the complainant has claimed both. The other mode by which you file off the back of the teeth, leaves them, it is conceded, or must be conceded, perfectly concentric. Well, if they are perfectly concentric, they are "substantially" concentric. It is impossible to make them more substantially concentric than mathematically concentric. How can it be said to be an error of construction, to say that the teeth are to be concentric when such is the statement of the patent itself; and one of the modes in which he recommends the making of the machine does make them mathematically and substantially concentric, even supposing the other mode does not. But I do not think that there is any force in the argument that the other mode does not. The words "substantially concentric," were used to allow the other mode, by which the teeth might be slightly elevated. But there is this limitation to that elevation. That is, they are still to be so that they shall be substantially concentric, and be protected by the preceding teeth. That is the limitation; and they are not to elevate them so much as to violate that condition.

I can not think that there is any substantial ground to suppose that there is an error in construction in this respect.

Remarks were made in relation to the patent, as issued in 1840, and they were made with a view to the construction of the reissue in 1849. But the reissue was to correct mistakes made in the issue of 1840, and if there is any real doubt in the construction of the language of the issue of 1849, that construction may be aided by reference to the issue of 1840. If it is of doubtful construction we may refer to the original to aid the doubt as to the reissue; but, taking the language of the reissue, I do not think it can be said there is a doubt that can be aided by the first issue in 1840.

We then come to what I suppose is more relied upon, and that is, the Shly patent, in respect to which there are two or three affidavits: One by Baldwin, one by Tainter, and one by Goulding. As to Tainter and Goulding, they are mere opinions of experts, going to show that Shly's patent describes Whipple's invention, with such improvements as he has described and claimed in his patent. It will be necessary, of course, to look at these affidavits as to Shly's patent and Whipple's patent, to see what effect should be given to these affidavits, and these opinions of these experts. It will not follow, that because experts have expressed an opinion that Whipple's patent is like a

preceding patent, the court will consider that as evidence to go to a jury. The court must look at it itself. It might be urged, I know, that this is evidence, and that therefore it is matter to be weighed by a jury. That is not always true of opinions of experts. We must see how much the opinions of experts embody questions of law as well as of fact. or whether they embrace in them any question of law. When a question of law is involved in the opinion of experts, that is not to be left to a jury; and when the fact stated involves in effect the construction of a patent. that fact is founded on a question of law, and is of no force except as it embraces a question of law. Consequently the opinion of the experts contains nothing to go to a jury, and in fact nothing on which they can sustain themselves.

Now I apprehend these affidavits proceed on an entirely erroneous construction of the plaintiff's patent. There is no other way of accounting for them. They have undoubtedly adopted a construction of the plaintiff's patent entirely different from what the court construes it, and adopting that construction, then with their knowledge of facts, they incorporate an opinion with that erroneous construction, and come to a certain conclusion.

It seems to me impossible that they could form any such conclusion on the construction which I gave to the plaintiff's patent. They say that in Shly's patent they find a surface for floating burrs, so that the guard can act upon it. I dare say they found something they consider a surface, but is it the plaintiff's surface? That is the question; and it depends on the construction which they give to Whipple's patent. Now, how is Whipple's surface made? It is that the backs of the teeth are to be concentric, so as to present a surface against which a guard can act. What are the teeth of Shly's patent? Here is a model presented by the respondent—not authenticated and proved a true one by any means. but presented by him as a model. Now the patent gives no other description of the teeth, but that they are saw teeth. That is all. Are we to infer that the backs of circular saws are concentric with the axis on which the saw revolves? Take a line of the back of one of these teeth; will it be concentric and form a circle concentric with the axis on which the saw revolves? I do not think that anybody could gather that from the name of circular saw teeth. Then how do these saws present a surface. on which the burrs are to be sustained, subject to the action of the guard? Why, by the very terms of the patent, the saws are to be an inch apart, just as in Whitney's saw gin, regarding which Shly's patent professed only to be an improvement on a machine then in use. The space left between the saws is for the purpose of allowing burrs to fall down, and so as not to be on the teeth of the saws. They do not constitute a plain surface, therefore. There may be a plain surface between the saws; but that is not on a level with the points of the teeth, nor does it make a continuous surface with the backs of the teeth. There need be nothing further said in that respect. Shly's patent does not seem to have changed Whitney's patent. It is the same as to saws and gratings. He has named certain improvements which he has made, but not one of them touches this part of the machine. The truth is, that what they call this plain surface, so far as it has any operation, is a guard.

It is a guard by which the burr is prevented from going along with the teeth of the saw. You may call it a guard on each side of the saw for preventing the burr from passing with the wool, and thus supporting it; but, so far from that surface being concentric with the axis, it is partly concave and partly convex. So far from constituting any part of the cylinder, or moving with the cylinder, it is stationary. It is, therefore, quite certain that both of these affidavits which have been offered have mistaken the construction of Whipple's patent, and have misapplied their notions to Shly's patent. They have used certain language, not one word of which is found in Shly's patent, and have appealed to us as if that meant the same thing as in Whipple's when he uses these terms. With these mistakes, I do not think I can take their opinions as of value in relation to it, because their opinions are the result of an error.

There is a strong opinion, in point, in the house of lords, by the late Baron Park, now Lord Wensleydale, which I think is quite applicable to this case. The question there was, whether there was evidence to be left to a jury of an infringement. I think the court of queen's bench left it to a jury. It was carried to the court of exchequer. Thence it was carried to the house of lords, and they affirmed the opinion of the court of exchequer. There were two most eminent experts who were introduced on the trial, and swore it was an infringement, and yet the court of exchequer and the house of lords decided there was no evidence to be left to a jury. Why? There is no very full explanation; but Lord Wensleydale says: "The opinion of experts is often given to a jury as evidence of infringement, but it ought to be rejected whenever it involves a question of law; and that an expert is never to testify to a question of law. And the court then, looking at the machine themselves, and looking at the patent, says, that upon any true construction of the patent that machine could not be an infringement, no matter how many experts may testify, and their evidence is not to go to a jury." Now I do not think in this case, which is very differently stated from what it would be if it were new before me, I should send it to a jury. The only question is, whether

I see such difficulty in matters of fact that I will put it to a jury, I do not see any such difficulty. At all events there is not such matter that, sitting in a court of equity, I should send the case to a jury to determine. There was Mr. Baldwin's evidence which I suppose was intended to introduce a machine as actually existing, and going further than Shly's patent. Here was a machine actually in use which was like his. Mr. Baldwin describes a machine which was in use in 1839, and speaks of a roller which acted as a guard. Now if Mr. Baldwin had described that machine much more fully than he has —if he had described it so that his description would have accurately described Whipple's invention—I think there would be great difficulty in allowing that evidence to prevail against the patent—I mean to say that where the recollection of a witness, who, after the lapse of twenty-one years, is called to state that he has seen or used a certain machine, and then undertakes to describe it from memory without stating that he has had any thing to refresh his memory during that time, producing no model or drawing—I think it would be extremely hazardous upon such a recollection, to undertake to say that that machine was like the plaintiff's. There are so many errors to which a man honestly is liable that I think it would be extremely hazardous. Why, we see every day, when a machine is presented to experts, one set of witnesses will say that it is like the inventor's patent, and the other set will testify directly to the contrary. The one or other of them must be wrong. It is every day's experience that this is the case. Take the case of Howe's sewing machine. The Walter Hunt machine is sworn to, and if the recollection of the witnesses had been taken years before as to Hunt's invention, it would be certainly an invention exactly like Howe's. Experts were called—were rigidly examined, and it was very difficult to show that this machine was not like Howe's, except in this mode: it was averred that that machine would not make a continuous seam, and it was contended that Howe's would. This was the difference, and it shows that they were not the same. But there were oaths of witnesses that they were the same. But the stubborn fact that Hunt's machine would not work and that Howe's would, made the oaths of the witnesses as inoperative as the machine.

I recollect another case in reference to a saw-set. A witness testified to having used a saw-set, exactly like the one patented, before the date of the patent, and that he still had it at his house. He was told to produce it, and he brought it into court, and it had the maker's name on it who made the plaintiff's machine, and under the plaintiff's patent.

I name these cases to show how extremely hazardous it is, after many years, for a witness to state that any given machine is exactly like another machine. But in this case, there is a greater difficulty. Mr. Baldwin was produced to show that there was another machine, different from Shly's patent; otherwise, his evidence is worth nothing. He was a witness on the stand, in the case before the referee, and there he says his machine was the same as Shly's patent, and he is now brought to swear that it was something materially different. And it is a little singular, that, in the affidavit, it is first written that it is substantially like Shly's patent. The word "substantially" is erased, and the word "considerably" is used. I infer that the party defendants were not pleased with the word "substantially," and changed it for the word "considerably." I hardly think that Mr. Baldwin meant to say in this affidavit, that the machine he used was not substantially the same as Shly's patent; and that although he has given a description of it, I think he himself would not say he considered it substantially different. In his former testimony, he said it was announced by Shly, as having been made according to his patent, and that he had compared it, and it was so.

I do not think, therefore, that either as to matters of fact or law, there has been any thing presented on this re-hearing which can affect the opinion I formerly expressed, and it seems to me that I must adhere to the result I formerly came to, that an injunction must be granted.