### REES et al. v. LOMBARD et al.

Circuit Court of Appeals, Ninth Circuit.
August 1, 1927.

Appellees' Motion for Modification of Judgment Denied October 3, 1927.

No. 5051.

**I. Patents ⬥⟹310(7)—Denying infringement, without denying acts constituting infringement, raised no issue as to latter.**

Answer denying manufacture and sale of patented device in infringement of patent, but not denying manufacture and sale, raised no issue as to manufacture and sale, since, to deny infringement, and not to deny the acts constituting an infringement, raises no issue as to the latter, and contention respecting sale and manufacture could therefore not be considered on defendants' appeal.

**2. Appeal and error ⬥⟹882(3)—On appeal, party is bound by his construction of pleading in lower court and theory on which he submitted cause or defense.**

In an appellate court a party is bound by the construction he put on his pleading in the lower court and the theory of fact on which he there submitted his cause or defense.

**3. Corporations ⬥⟹186—Controlling stockholders held not entitled to take advantage of corporation's default in royalty payments under exclusive patent license agreement to cancel agreement without notice and opportunity to make good default.**

Where defendant R. who assigned his application for a patent to corporation B., substantially owned by him, thereafter, with defendant H., as supposed owners, in consideration of payment of royalties, granted to corporation P., in which defendants were large stockholders, the exclusive license to manufacture and sell the patented apparatus, and thereafter defendants obtained control of P. corporation and gave notice of cancellation of license agreement, *held* that, in suit by stockholders of P. corporation, other than defendants R. and H., in behalf of the corporation, to enjoin defendants from infringing the patent, on theory that defendants R. and H. had conspired wrongfully to terminate the license agreement without sufficient grounds, R. and H. could not take advantage of default in payment of royalties without first warning P. corporation of their intention to hold it strictly to terms of contract and giving it reasonable opportunity to make good any existing default.

**4. Patents ⬥⟹282—Suit will not lie to enjoin infringement of pending application for patent.**

Suit will not lie to enjoin infringement of a pending application for patent; hence interlocutory decree enjoining infringement of patent and of two pending applications for patents was too broad.

**5. Patents ⬥⟹311—In patent infringement suit, court may incidentally determine status of exclusive license agreement, but cannot adjudicate rights thereunder in no wise involved in question of infringement.**

In patent infringement suit against licensors by licensee under exclusive license to manufacture and sell patented apparatus, court has jurisdiction to adjudicate present status of license agreement as a necessary incident to its jurisdiction over the primary issue of infringement; but court cannot make the agreement primary subject-matter of the action, and vindicate rights thereunder which are in no wise involved or incidental to question of infringement.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Patent infringement suit by Norman Lombard and others, trustees for Ellen Lombard and others, against Claude Rees and others. Decree for plaintiffs, and defendants appeal. Modified and affirmed.

William K. White and Charles M. Fryer, both of San Francisco, Cal., for appellants.

Alexander D. Keyes, Herbert W. Erskine, and Morse Erskine, all of San Francisco, Cal., for appellees.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The plaintiffs below (appellees here), as stockholders of the Progressive Evaporator Company, Inc., hereinafter called the Progressive Company, brought this suit in its behalf to enjoin the defendants, other than the Progressive Company, from infringing patent 1,413,135, covering a fruit-drying apparatus. Defendant Rees, the inventor, applied for the patent, but assigned the application to the Rees Blowpipe Manufacturing Company, a corporation substantially owned by him. Shortly after making this first application, he filed two others for improvements, which are still pending. In various ways the other defendants acquired interests in the patent and the two pending applications. On February 10, 1922, Ress and his codefendant Hine, being then supposed to be the owners, entered into a contract with the Progressive Company, by which, in consideration of the payment of royalties and for other valuable considerations, they granted to it the exclusive right and privilege throughout the United States and foreign countries to manufacture and sell and use the apparatus. The Progressive Company was not at the time aware of the prior assignment to the Blowpipe Company,

and apparently that company, having acquiesced in the license agreement, claims no superiority of right as against the Progressive Company by reason of such assignment.

Rees and Hine were also large stockholders in the Progressive Company, and, dissension having arisen, they, with their friends, got control and ousted certain of the plaintiffs as officers, in the fall of 1922. The story of the controversy is a long one, with many details unnecessary to be related. The upshot was that on November 1, 1922, the defendant Neal, a friend of Rees and Hine, became president of the company, and Rees and Hine, respectively, its vice president and secretary. On January 13, 1923, pursuant to a previous understanding, Rees and Hine gave to Neal, as president of the Progressive Company, notice of the cancellation of the license agreement, the notice being signed by them alone, although at that time the Rees Blowpipe Company was the recognized owner, by assignment, of the patent. About the same time, too, the Blowpipe Company entered into an agreement with Neal and his partner, Ward, granting them license rights like those defined in the agreement with the Progressive Company.

In effect, plaintiffs' contention is that Rees, Hine, and Neal conspired together wrongfully to terminate the Progressive Company's license; that there was no sufficient ground, either in fact or at law, for such termination; that for this and other reasons the notice of cancellation was ineffective; and that the subsequent acts of manufacture, sale, and use of the patented apparatus, participated in by different ways and to different degrees by the several defendants other than the Progressive Company, constituted actionable infringement of the rights of that company. No question is raised of the propriety of the action as a stockholders' suit, or of the right of the licensee to maintain a suit for infringement against the patentee. Littlefield v. Perry, 21 Wall. 205, 22 L. Ed. 577.

[1] The point most persistently urged by appellants is insufficiency of the evidence to establish manufacture and sale of the patented device by defendants subsequently to the notice of cancellation. But, while the proofs are meager and largely inferential, the contention is clearly an afterthought, and under the circumstances must be overruled. No such issue was raised by the answer. When the pleading is analyzed, it is found that the denials are not of manufacturing and selling, but of manufacturing and selling in violation or infringement of the Progressive Company's rights. To deny infringement, and not to deny the acts constituting an infringement, is insufficient to raise an issue as to the latter. Jordan v. Wallace, 13 Fed. Cas. 1104, No. 7,523; Ely v. Monson, etc., 8 Fed. Cas. 605, No. 4,431; 30 Cyc. 1035.

[2] Such was the construction put upon their pleading by counsel for appellants in the opening of the trial, for after explaining what the evidence would show, they concluded their opening statement to the court thus: "So that the real issue of the controversy here is, first, were the royalties paid; and, second, were the royalties paid at the time that the notice of cancellation was given? It is the contention of the defendants that those royalties were not only not paid then, but that no royalties at any time had ever been paid from the time that they became due in April, 1922, up to the time that notice was given." The matters thus referred to had to do only with the issue of the right to cancel the license, and at no time during the course of the trial did appellants intimate any question of manufacture or sale. Doubtless for that reason such proofs relating to that subject as the record exhibits are only incidents of evidence offered for other purposes. The rule is well settled that, in an appellate court, a party is bound by the construction he put upon his pleading in the lower court, and the theory of fact upon which he there submitted his cause or defense. 3 C. J. 718; Lesser Cotton Co. v. St. Louis, etc., R. Co. (C. C. A.) 114 F. 133.

[3] As already suggested, the principal issue to which most of the evidence was directed is whether defendants' attempted termination of the license agreement was effective. It has various aspects, all involving testimony measurably conflicting, either in direct statement or in possible implications and inferences. The problem is complicated by the cross-relations to the transactions of Rees and Hine, who were the principal actors upon the one side of the controversy, and substantially the only beneficiaries of what was accomplished. They had interests in their own right to further; they owned substantially all, if not all, the stock of the Blowpipe Company, and they held half or more of the stock of the Progressive Company; and, as we have seen, the notice of cancellation was given after they acquired control of the latter company. Judged in the light of their subsequent conduct, it would seem that their main purpose in seeking control was to bring about a cancellation of the license. Applying a familiar principle, the court below resolved the conflict and confusion by holding, among other things,

that, if there was default in respect of paying royalties, Rees and Hine could not, under the circumstances, take advantage of it without first warning the Progressive Company of their intention in the future to hold it strictly to the terms of the contract, and giving it a reasonable opportunity to make good any existing default, and that this had not been done, and further that, as controlling factors in the management of the company, they themselves had failed in their duty to protect its interests. We cannot say that the conclusions are without substantial support in the evidence.

[4, 5] In one respect the interlocutory decree is thought to be too broad. It enjoins infringement, not only of the patent, but of the two pending applications for patent, and inferentially seems to authorize an award of damages for the devices covered by the applications, as well as for that of the patent. The suit must be regarded as one for patent infringement; otherwise, there is no ground for federal jurisdiction. But a suit will not lie to enjoin infringement of a pending application for patent. Columbia & N. R. R. Co. v. Chandler (C. C. A. 9th) 241 F. 261, 263. True, the court below had jurisdiction to adjudicate the question of the present status of the license agreement as a necessary incident to its jurisdiction over the primary issue of infringement of the patent. Littlefield v. Perry, 21 Wall. 205, 22 L. Ed. 577; Excelsior Wooden Pipe Co. v. Pacific Bridge Co., 185 U. S. 282, 22 S. Ct. 681, 46 L. Ed. 910. And in other controversies between the parties touching rights under the contract it may be such adjudication could be invoked by way of estoppel upon the question of its present validity. But the court cannot, in a suit for infringement of the patent, make the contract the primary subject-matter of the action, and vindicate rights thereunder which are in no wise involved in or incidental to the question of infringement. Such apparently was the view of the plaintiffs when they instituted the suit, for, while the two pending applications are referred to in the complaint as being covered by the license, the prayer is strictly limited to relief touching the patent. Wade v. Lawder, 165 U. S. 624, 627, 17 S. Ct. 425, 41 L. Ed. 851; Victor Talking Machine Co. v. The Fair (C. C. A.) 123 F. 424; Lowry v. Hert (C. C. A.) 290 F. 876, 878; By-Products Co. v. Mabee (D. C.) 288 F. 401, 404.

As to the provision in the decree relating to attorney's fees, we construe it as being nothing more than a reservation of the entire question of attorney's fees. At most the authorities cited by appellees tend to support the view that they may be reimbursed out of any fund recovered for their reasonable expenses in accomplishing the recovery, a matter which would be of concern to appellees and the Progressive Company, but not to the other defendants; but, under the construction we place upon the decree, the whole question is left open for consideration and, disposition upon the final hearing.

The decree will be modified to exclude relief, both injunctive and compensatory, on account of the two patent applications; otherwise, it is affirmed, without costs of appeal to either party.