ADAMS, District Judge.
The bill charges that the complainant is the owner of several letters patent of the United States, numbered, respectively, 373,639 (dated November 22, 1887), 418,438 (dated December 31, 1889), 425,653 (dated April 15, 1890), 428,068 (dated May 20, 1890), and 430,418 (dated June 17, 1890),—all for certain new and useful improvements in car trucks, railway cars, and motor trucks for cars,—and that the defendants had, prior to the institution of this suit, infringed the same by the conjoint use thereof in manufacturing cars, and also by selling cars so manufactured. The bill further charges that the defendants give out and threaten that they will continue such infringement. On these alleged facts the complainant prays for an accounting, and perpetual *910 injunction restraining such threatened infringement. The defendants’ answer puts in issue the validity of the patents and the alleged infringement thereof by the defendants. At the hearing the complainant withdrew from the consideration of the court the patents aforesaid numbered 373,639 and 418,438, and disavowed any right of recovery thereon. The case, therefore, stands submitted to the court on patents Nos. 425,653, 428,068, and 430,418. These three patents, as already seen, are dated, respectively, April 15, May 20, and June 17, 1890. Much proof was taken bearing on the issue of patentable invention, and the same has been critically and ably analyzed and presented in argument; but, inasmuch as I am not able to find satisfactory proof of infringement, I do not consider it advisable to state my conclusions on this issue.
The bill was filed August 15, 1890,—four months after the date of the oldest patent, and less than two months after the date of' the youngest patent, in suit. Complainant’s counsel does not claim to have shown by direct proof any acts of infringement occurring after the date of any of the patents, but strenuously contends that the court should indulge such presumptions and draw such inferences, from acts done by the defendant four and six months before-the dates of the patents, as will establish an intention on the part of the defendants to infringe subsequent to such dates. On the assumption that complainant’s patents are valid, his monopoly under-any of them commenced with their respective dates. An inventor has no exclusive right to his invention at common law, but derives all such exclusive right from the grant of the government, subject to the provisions of the statutes conferring the right. These statutes-(section 4884) limit the monopoly to the term of 17 years from the date of the grant, as evidenced by the patent. Manifestly, therefore, there can be no invasion of the patentee’s rights by any manufacture or use of the device, the subject-matter of the expected patent, prior to the date of the patent. On this subject, Chief Justice Taney, in the case of Gaylor v. Wilder, 10 How. 477, observes as follows:
“The inventor of a new and useful improvement certainly has no exclusive-right to it until he obtains a patent. The right is created by the patent, and no suit can he maintained by the inventor against any one for using it before-the patent is issued.”
The inchoate right existing in an inventor, after making an application for a patent and while the same is undergoing an examination in the patent office, does not entitle him to injunctive relief against an infringer of such right. Rein v. Clayton, 37 Fed. 354;. Lyon v. Donaldson, 34 Fed. 789.
From the foregoing it must follow that any acts done by defendants, either in the way of accomplished use of complainant’s invention, or of threats to make use of the same prior to April 15, 1890,. the date of complainant’s oldest patent, cannot, in and of themselves, be any such evidence of infringement as to entitle complainant to a decree in this case. If, however, such use or threats to-make use of such invention are of such character as to fairly justify *911 the inference that defendants intended to continue the use thereof after patents should be issued to complainant, then complainant is-entitled to a decree enjoining the defendants from carrying out their threats. An examination of the proof on this subject is, therefore,, necessary.
The application for patent 425,653 was filed June 25, 1888, for-patent 428,068 was filed March 15, 1888, and for patent 430,418 was-filed- October 2, 1888. The patentee made a brass model, consisting' of trucks and wheels, embodying the invention of these patents, and exhibited it at a convention of the American Railway Association at Washington, D. '0., in October, 1888. Defendant Kling, who is also-the president of the defendant corporation, was present at the convention, and had an opportunity of seeing this model there. In April, 1889, the Sprague Electric Company purchased of complainant a. full-sized truck embodying the inventions of these patents, and shipped it to the defendant corporation, which received it on April 29,. 1889. The defendant, soon after this, constructed nine closed cars,, with trucks like those received from the Sprague Electric Company, embodying the complainant’s device,_ for the Wyatt Park Railway-Company, at St. Joseph, Mo., and shipped them to the last-named company in the following month of August. The oroof further-shows that while complainant, Brill, was on the stand, on June 26, 1891, the following questions were put to him, and the following-answers made by him, namely:
“Question. Please look at the brass model wbick I sbow you, and statewbat it is, and bow it is connected w'itb tbe defendants in this case. (Said brass model is offered in evidence, marked ‘Complainant’s Exhibit, Truck Model Ko. 4.’) Answer. Tbe brass model is tbe model of our ‘Truck No. 4,’1 as we call it in our business, and it is practically an exact copy of a truck, that the St. Louis Car Conrpany have been furnishing to different parties,, and the same I have seen in St. Louis and other places. Question. State when you saw trucks manufactured by defendants in St. Louis, and where and what you saw. Answer. I first saw them in December of 1889, on cars operated by the Lindell Railway Company of St. Louis. Question. Did you examine these cars carefully at the time? Answer. I did. In fact, the trucks on them are so much like our trucks that, when I first saw them, I thought it was one of our make, and it was only upon the closest examination that I discovered that it was made by the St. Louis Car Company. It is exactly like our truck, with the exception of one small detail. Question. Had yoii previously shipped any car trucks similar to the one you speak of to the defendants and when? Answer. Several, during 1889, were sent to the defendants’ shop, to be placed on car bodies that they were building.”
Tbe proof further shows that, while defendant Kling was on the-stand, on November 17, 1891, the following questions were put to-him, and the following answers made by him thereto, namely •
“Question. Did your company build the motor cars for the Lindell Road in this city? Answer. Yes; they did. Question. And I understand that your company is sued by Brill in this case for building those cars? Answer. Yes. Question. Please state whether or not, in the cars made for the Lindell Railroad Company, for which you are sued in this cause, there is a bar corresponding to the bar, c, of complainant’s patent, No. 430,418. Answer. No, sir; it is not used. * * * Question. Does it (referring to a drawing exhibited to-the witness), or not, represent the truck made for the Lindell Railroad by your company, and for which you are sued by Mr. Brill? Answer. It does.”
*912 In addition to the foregoing testimony of the witnesses relied upon by complainant’s counsel as proving infringement by defendants, attention is called to the language of defendants’ counsel in offering Kling as a witness, as follows:
“Counsel for defendant states that at this time he desires to call Mr. Kling ■to testify to the exact construction of the truck frames built for which the complainant brings action, before Mr. Smith proceeds any further with his testimony.”
On this issue of information, complainant’s counsel calls attention, also, to a letter written to defendant corporation, of date January 6, 1890, which is as follows:
“Philadelphia, Jany. 6, 1890.
“The St. Louis Car Company, P. M. Kling, Esq., Manager, St. Louis, Mo.— Dear Sir: Your favor of the 3rd to hand, and contents noted carefully. Our recourse in the case of an infringement is against the railroad company operating the patented device, 'and they are the people against whom we open suit, and usually their suit is defended by the party furnishing said imtented device.. Prom a legal point it is our place to warn the parties against whom we propose to enter suit. As we said in ours of the 12—26—’89, we practically control the patented independent rigid trucks for electric motor cars, and it is a question of but a short time when we will assert our rights, in which case it is necessary for us to proceed against manufacturer and user.
“Yours, truly, James Bawle, Secy.”
The letter of January 3, 1890, to which the foregoing seems to be an answer, is as follows:
“St. Louis, Mo., Jany. 3rd, 1890.
“J. G. Brill Co., Philadelphia, Pa.—Gents: We are in receipt of your favor to the Colfax Ave. Elec. By. Co., of Denver, Col., dated 12—26—’89, notifying them as to liability for infringements of your right, on pat. truck. We have contract to furnish C. A. E. By. Co. with our pat. truck; therefore, if you are really under the impression that your patent is being infringed upon, the proper caper will be to write us in regard to same, and not try to work a scare game on our patrons. As to your Mr. Brill coming to St. Louis, we shall be pleased to see him. Hope this will not be practiced in the future. We remain,
“Yours, respt., St. Louis Oar Co., P. M. Kling, Mgr.”
Complainant’s counsel also calls attention to a letter, written by complainant to defendant corporation, of date July 18, 1890, as follows:
“Philadelphia, July 18th, 1890.
“St. Louis Car Company, S. H. Kling, Esq., Superintendent, St. Louis, Mo.— Dear Sir: For some time past you have been making rigid independent trucks for electric motor purposes, of which we have seen a number, namely, those you have made for the Lindell By. Co. of St. Louis, and Lafayette, Denver, and other places, all of which are direct infringements of the following patents: Nov. 22, 1887, No. 373,639, G. Martin Brill and John A. Brill; Dec. 31st, 1889, 418,438, G. Martin Brill; June 17th, 1890, 430,418, John A. Brill and G. Martin Brill: Apr. 15th, 1890, 425,653, John A. Brill and G. Martin Brill; May 20th, 1890, 428,068, John A. Brill; July 15th, 1890, 432,113,-John A. Brill. The trucks you have made also infringe other applications for patents which we have before the patent office for the hanging of the motor and brake. We notify you to quit the use of these devices at once; otherwise, we shall be compelled to resort to law.
“Yours, truly, John A. Brill.”
*913 From this evidence,—and I have endeavored to state it all, and that, too, most strongly in iavor of the complainant,—it is claimed that the court ought to find, as a fact, that the defendant corporation either actually constructed and sold cars embodying complainant’s invention, after complainant’s patents were issued in July, 1890,. or, at least, that it threatened so to do-.
. Complainant’s counsel argue that the court should find evidence of infringement, after the issue of his patents, from the evidence of witness Brill, when he says, as already set out, that “the model shown him is practically an exact copy of a truck that the St. Louis Car Company have been furnishing to different parties,” and when he says he “first saw cars manufactured by defendant corporation after his device in December, 1889,” claiming that the words “have been furnishing” may relate to a time .subsequent to the dates of the patent, and that the words “he first saw” cars, etc., indicate that he had seen them afterwards. This kind of evidence is too vague and uncertain to establish the fact claimed for it, and the argument is not convincing. In the light of all the evidence, these expressions of the witness clearly relate to what he had before that time sworn to, namely, the manufacture of cars by defendant corporation, in the summer and fall of 1889, for the Lindell Railway Company, and, possibly, the St. Joseuh & Denver Railway Company. It may be also remarked that the inference counsel draws in argument from the language of defendants’ counsel, when offering Kling as a witness, is rather forced, and exhibits more distress than confident reliance on its intrinsic value.
Complainant’s counsel argue that the proof of construction by defendant of cars for the Lindell Railway Company and other companies, before the date of any of its patents, creates a presumption) that the defendant would continue to so construct them after the* patents were issued to complainant. I do not think such presumption obtains. Defendant had a perfect right, so far as the law is. concerned, to manufacture any kind of cars, even those embodying the principle of plaintiff’s patents, up to the time complainant’s, monopoly came into existence by the grants of patents to him. The-presumption is that defendants conformed to the law rather than, violated it,—that they respected complainant’s rights rather than.; infringed them.
Again, it is claimed, by way of argument, that defendants, in order to manufacture the cars for the Lindell Railway Company ami' other parties in the fall of 1889, must, of necessity, have expended-much money in making patterns and otherwise outfitting themselves-, for the work, and that the court ought to presume that defendants-, would not have entered upon so expensive an enterprise without intending to continue it after the grant of patents to complainant;. Even if the court should take judicial knowledge of the assumed, facts involved in the foregoing argument, and should indulge the-presumption that defendants intended to continue the business after the grant of the monopoly to complainant,—which, in my opinion, cannot be done,—it would, for the reasons already suggested, natu- *914 rally draw the inference that defendants intended to continue the business lawfully; that is, under license from the patentee, rather than in contravention and violation of his rights.
Again, it is argued that the correspondence already referred to between the complainant and defendants evinces a purpose on the part of the defendants to continue infringement after the grant of letters to complainant. In the first place, the complainant’s letter to defendants’ customer in Denver, referred to in the correspondence, was manifestly somewhat annoying. It asserted the existence of exclusive rights on his part six months before he acquired them, and properly enough evoked the rebuke from defendant corporation found in its letter to complainant of January 3, 1890. It is claimed that this last-mentioned letter is equivalent to saying: “We intend to continue to build such trucks. If you wish to sue any one, sue us.” I think this is a forced construction placed upon it. The phraseology from which this construction is drawn is as follows:
“If you are really under the impression that your patent is being infringed upon [by persons to whom we have sold trucks], the proper caper will be to write us in regard to same, and not try to work a scare game upon our patrons.”
This language, in my opinion, taken in connection with the admitted fact that complainant then had no exclusive right to make the trucks, cannot be tortured into a threat on the part of defendant corporation either to continue to make the same at all after complainant should secure a patent, or to continue to do the same without license from the patentee.
Again, complainant’s letter of January 6, 1890, warning defendant of his exclusive right to the alleged patented independent rigid trucks for electric motor cars, and stating that it was but a short time before complainant would assert his alleged right, was a false statement of facts; and the fact that it evoked no response from the defendants is no evidence that they were violating any rights of complainant, or that they intended to do so.
The only other letter specially called to my attention on this issue is complainant’s letter to defendant corporation, of date July 19, 1890, four days after the date of complainant’s latest patent. It is argmd that, because defendant corporation did not answer this letter, it thereby admitted that it intended thereafter to infringe complainant’s rights. This letter, already copied, charged the defendant, in effect, with having theretofore infringed complainant’s rights in the matter of making cars for the Lindell Railway Company and for parties in Denver, and calls attention to the fact that the patents sued on in this case had then been issued to complainant, and notifies defendant as follows: “To quit the use of these devices at once, otherwise we shall be compelled to resort to law.” The reference contained in this letter to the Lindell Railway Company and the parties in Denver, in the light of the evidence, manifestly refers to the transactions, already alluded to, in the summer and fall of the year 1889. In fact, the evidence discloses no other transactions with these parties. In other words, there is no proof of a continuation of building cars embodying complainant’s device through the *915 six months following these specific transactions, and prior to the grant to complainant of the patents sued on. The manifest purpose of the letter is to inform defendants of complainant’s perfected monopoly, and to threaten a resort to the law in case of future infringement. In the absence of evidence to the contrary, the presumption must be that defendants intended to respect complainant’s rights. The bare fact that defendants did not answer this letter, and in terms admit complainant’s rights, and consent to recognize them, is, in my opinion, under the circumstances of this case, no evidence at all of an intention to violate them.
Again, it is argued that, because it was easy for defendants to have disproved an intention to infringe, the fact that they did not do so is presumptive evidence that they entertained such intention. This argument shifts complainant’s burden upon .the defendants. The law as well as settled practice forbids this. A clear and well-defined issue as to infringement was made in defendants’ answer, and six months before the trial of the case defendants’ counsel notified complainant’s counsel that he intended to move for a dismissal of the bill for failure to prove infringement or intent to infringe. This issue was a material issue, and upon its determination complainant’s right to injunctive relief depends. For want of proof of infringement, or intention to infringe, the bill must be dismissed. The order will be made without prejudice to complainant’s right to institute a new suit.