### FEDERAL CONST. CO. v. PARK IMPROVEMENT CO.

(Circuit Court, E. D. Wisconsin. December 2, 1908.)

No. 458G.

**1. Patents (§ 181*)—Infringement—Ownership of Patented Article—Right of Use.**

Ownership of a physical structure covered by a patent does not necessarily include the incorporeal right to use the same, nor can such incorporeal right be foreclosed by the operation of state statutes.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 181.*

Power of patentee to control his invention, see note to Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 25 C. C. A. 280.]

**2. Patents (§ 187*)—Infringement—Consent of Patentee—Structure Built Before Application.**

The inventor of an amusement device, requiring a large building for its inclosure, in partnership with others built such a device and inclosing building in a park with the consent of the lessee of such park, and operated the same for several months before applying for a patent thereon. Subsequently the existing lease having expired, defendant leased the park, and thus came into possession of the device and building, which had been left attached to the realty. Several months later the inventor was granted a patent on his application. Rev. St. § 4899 (U. S. Comp. St. 1901, p. 3387), provides that "every person who purchases of the inventor * * * or with his knowledge and consent constructs any newly invented machine or other patentable article prior to the application by the inventor * * * for a patent, or who sells or uses one so constructed, shall have the right to use and vend to others to be used, the specific thing so made or purchased without liability therefor." *Held*, that defendant was within the protection of such statute, and was not liable for infringement because of its use of the device so in its lawful possession.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 264; Dec. Dig. § 187.*]

In Equity. Suit for infringement of letters patent No. 789,243, for an amusement device, granted to William H. Strickler, May 9, 1905. On final hearing.

The bill of complaint as finally amended is practically in the usual form for infringement and injunction, based on letters patent of the United States No. 789,243, covering an amusement device.

The answer raises no issue as to the existence or validity of the patent, nor as to the use of the alleged infringing device. The defense principally re-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lied upon, briefly stated, is that the patented article, an amusement device, consists of a long, tortuous inclined plane, whose several sections are actuated by machinery to move in various ways, and calculated to be arranged in connection with and sheltered by a suitable building about 24 by 40 feet. That in June, 1904, being several months before the patent was applied for, William H. Strickler, the inventor, who had associated with him two other persons as partners, caused one of these structures to be built and installed in a certain park in the city of Milwaukee, known as Pabst Park, the title to which is and was in the Pabst Brewing Company; and that, to house and shelter such bulky contrivance, a large building was constructed by such partnership within said park, which building was attached to the freehold and permanently annexed to other buildings and structures thereon. That when said device had been so installed in said park it belonged to and was operated by said Strickler and his associates as a copartnership, for their own profit and advantage for several months. That no lease or permission was ever acquired from the owners of the park, but it was erected by consent of one Tielges, who was a lessee of the Pabst Company. In October, 1904, this lease expired, and no further authority or permission was acquired to authorize the further operation of such device after the 1st of October, 1904. That as matter of law the act of the inventor in building and installing such amusement device before any application was made for a patent thereon left such device outside of the monopoly thereafter created by letters patent.

A defense was also pleaded under section 1770b of the Statutes of Wisconsin of 1898, which provides in substance that no foreign corporation shall transact business or acquire, hold, or dispose of property in Wisconsin until it shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of association. That the complainant is a foreign corporation, and has wholly omitted to comply with the requirements of this statute. That therefore every contract made by or on behalf of such corporation relating to property within this state is absolutely void.

It is further contended that the device, and the building in which the same was constructed, became a fixture and a part of the freehold under the Wisconsin law. The defendant became lessee of Pabst Park, and thus came into possession of the device in question, on the 3d day of March, 1905. The letters patent were granted to Strickler May 9, 1905, and were assigned to the complainant August 28, 1905.

L. M. Hopkins, for complainant.

McCabe & Dahlman, for defendant.

QUARLES, District Judge (after stating the facts as above). Several questions of law have been argued upon this hearing as to the effect and operation of the statutes of Wisconsin upon the property in question, especially as to the effect of section 1770b, St. Wis. 1898, as construed by the Supreme Court in Diamond Glue Company v. United States Glue Company, 187 U. S. 611, 23 Sup. Ct. 206, 47 L. Ed. 328. The instant case, however, as we view it, presents a single question: Does the use of the amusement device at Pabst Park by the defendant amount to an invasion of the patent monopoly? This question is simplified by the disclaimer of the complainant embodied in an amendment of the bill, which, for the purposes of this suit, withdraws any issue as to the lawful possession of the structure in defendant.

At the outset we concur in the contention of complainant that ownership of the physical structure does not necessarily conclude the incorporeal right to use the same, and also that such incorporeal right may not be foreclosed by the operation of the statutes of the state. This reduces the controversy to a single point: Does the patent monopoly embrace the device, in view of the circumstances attending its construction and operation by the inventor?

166 F.—9

Briefly stated, the history of the device shows that it was constructed in Pabst Park in June, 1904, by a copartnership of which the inventor was a member. His application for a patent was made September 3, 1904; letters were granted May 9, 1905. When this device was installed, Strickler had no monopoly in his invention. The physical thing, therefore, stood upon the same footing as any other personal property, the right to use or vend which flowed from ownership or lawful possession according to the principles of the common law.

The act of Congress, section 4899, Rev. St. (U. S. Comp. St. 1901, p. 3387), was then in full force and operation. It provides:

"Every person who purchases of the inventor or discoverer, or with his knowledge and consent constructs any newly invented or discovered machine, or other patentable article, prior to the application by the inventor or discoverer for a patent, or who sells or uses one so constructed, shall have the right to use, and vend to others to be used, the specific thing so made or purchased, without liability therefor."

This statute had already received construction by the Supreme Court in Wade v. Metcalf, 129 U. S. 202, 9 Sup. Ct. 271, 32 L. Ed. 661, in construing which the court say:

"First. Every person who 'purchases of the inventor' the machine before his application for a patent.

"Second. Every person who 'with his knowledge and consent constructs' the machine before the application.

"Third. Every person 'who sells' a machine 'so constructed,' that is to say, which has been constructed with the knowledge and consent of the inventor by another person.

"Fourth. Every person who 'uses one so constructed,' that is to say, constructed with the inventor's knowledge and consent by another person."

The inventor, when he authorized the copartnership to make use of his inventive thought, is presumed to have acted with reference to the settled law upon this subject, which would seem to conclude the controversy against him.

Counsel for the complainant, however, by an argument more subtle than sound, and by refinement of language, contends that the term "every person" in the fourth paragraph must not be taken literally to mean every person, but only a certain class of persons, namely, those who are in privity with such inventor or discoverer. We do not feel at liberty to read into the statute the limitation suggested by counsel. The purpose of Congress plainly was to divorce from the patent laws of the United States any structure built by or with the consent of the inventor prior to the application for letters patent, and leave it subject only to the control of the local law, like any other personal property. Therefore, when Strickler authorized the building of this contrivance in June, 1904, and its devotion to business purposes, he virtually elected to exclude it from any monopoly thereafter to be acquired. The character of the particular device was thus fixed, and private rights became vested under the state laws, which could not be disturbed by letters patent issued about a year later.

The contention of counsel seems to have been conclusively met by a later decision of the Supreme Court, Dable Grain Shovel Co. v. Flint, 137 U. S. 41, 11 Sup. Ct. 8, 34 L. Ed. 618, where the foreman of the mill of the defendant had, presumably with the consent of the mill-

owner, erected and operated a new device for which he afterwards secured letters patent, and brought suit for infringement. Although there appear to have been no contract relations between the millowner and the inventor as to the new device, the case was ruled by Wade v. Metcalf, supra. By analogy this doctrine is further supported by Chaffee v. Boston Belting Co., 22 How. 217, 222, 16 L. Ed. 240; Bloomer v. Millinger, 1 Wall. 340, 350, 17 L. Ed. 581; Adams v. Burke, 84 U. S. 453, 456, 21 L. Ed. 700; Morgan Envelope Co. v. Albany Co., 152 U. S. 425, 432, 14 Sup. Ct. 627, 38 L. Ed. 500. Whatever rights or remedies the complainant may have to recover his device or its value under the local law must be determined elsewhere. We are therefore of opinion that the patent in this case had no retroactive effect, and that the continued operation of the amusement device by the persons lawfully in possession of the same constituted no invasion of the complainant's monopoly.

For these reasons the bill must be dismissed, with costs.