COLUMBIA & N. R. R. CO. et al. v. CHANDLER et al.

(Circuit Court of Appeals, Ninth Circuit. March 19, 1917.)

No. 2883.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—LOGGING TRUCK.

The Chandler patent, No. 1,140,875, for a logging truck, *held* valid and infringed.

2. PATENTS ☞283(1), 319(1)—INFRINGEMENT—ARTICLES MADE BEFORE ISSU-ANCE OF PATENT.

A patentee cannot recover damages for the sale or use of his invention prior to the issuance of the patent, but the fact that articles embodying

the invention were manufactured before the patent was issued, unless by the patentee's consent, does not authorize their use thereafter.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–450, 452, 577, 578, 580, 581, 583, 584, 586.]

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Suit in equity by Elbert G. Chandler and the Northwestern Equipment Company against the Columbia & Nehalem River Railroad Company and A. S. Kerry. Decree for complainants, and defendants appeal. Reversed in part.

The patent involved in the present suit was issued to Elbert G. Chandler on May 25, 1915, letters patent No. 1,140,875, and was for an improvement in logging trucks. The invention consisted in constructing trucks having at their outer ends drawbars at standard height and at their inner ends drawbars below standard height, whereby to give clearance for sagging logs, and to permit the coupling together of the trucks when empty. The patentee, together with the Northwestern Equipment Company, a corporation, of which he was one of the directors and the principal stockholder, brought the suit against the Columbia & Nehalem River Railroad Company and A. S. Kerry, its president and manager. After alleging that the application for the patent was filed on February 25, 1915, the bill alleged that on February 5, 1915, the defendants ordered from the complainants 40 sets of trucks embodying the invention at $700 per set; that on February 11, 1915, the defendant Kerry informed the complainants that the Seattle Car & Foundry Company had made him a better price on the same kind of trucks, and that he was willing to take one-half of the order from the complainants at the price of $625 per set, otherwise he would place the whole order elsewhere; and that the complainants were thereby forced to take said reduced order at said reduced price. The bill further alleged, on information and belief, that the defendants had purchased from others than the complainants large quantities of the trucks built according to the specifications and claims of the letters patent, and have realized large profits and advantages in so doing; that the defendants had disregarded the notice of the complainants to desist from infringing; and that they still use and continue to use logging trucks which infringe the letters patent. The prayer was that the defendants be compelled to account for and to pay over the income and profits thus unlawfully derived from the violation of the complainant's rights, and be restrained from further violation, and that the court assess the damages the complainants had sustained by reason of the infringement, and increase the sum three times the amount of such assessment on account of the willfulness of the infringement.

The answer denied that the patentee was the original inventor of the truck, admitted that the defendants ordered from the Seattle Car & Foundry Company 20 sets of trucks, and has used the same, but denied that the defendants at any time knew or now know that Chandler was the inventor of any improvement employed or contained in such trucks, and they denied that they had purchased any other such trucks, save such 20 sets so purchased from the Seattle Car & Foundry Company.

The court, upon the pleadings and the evidence, entered a decree sustaining the validity of the patent and enjoining the appellants from using the trucks manufactured and sold to them by the Seattle Car & Foundry Company, and awarded damages on the basis of the profits which the complainants would have made, had they been given the contract for the 20 sets of trucks furnished by the Seattle Company at $625 per set, which damages the court increased to three times the amount thereof, or to the sum of $660, and enjoined them from further construction, sale, or use of such logging trucks, including the 20 sets so purchased from the Seattle Company.

Veazie, McCourt & Veazie, of Portland, Or., for appellants.
William R. Litzenberg, of Portland, Or., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] Upon a careful consideration of the record, we find no ground to disturb the findings of the court below that the invention was patentable, that the patentee was the original inventor of the improvement described in the patent, and that the trucks manufactured by the Seattle Company infringed the same.

[2] The damages awarded to the appellees by the court below are based wholly upon the profits which the appellees lost on the sale of each set of trucks furnished the appellants by the Seattle Company. There can be no claim for damages for making or causing to be made the trucks which were constructed by that company. The contract for their construction was entered into on February 9, 1915, and was immediately proceeded with. The application for the patent was not filed until February 25, 1915, and the patent was issued on May 25, 1915. At the date of the patent all the trucks made by the Seattle Company had been completed. Up to that time the Seattle Company had no knowledge that Chandler claimed the invention as his or had applied for a patent. In Gayler v. Wilder, 10 How. 477, 493 (13 L. Ed. 504), Chief Justice Taney said:

"The inventor of a new and useful improvement certainly has no exclusive right to it, until he obtains a patent. This right is created by the patent, and no suit can be maintained by the inventor against any one for using it before the patent is issued."

In Marsh v. Nichols, Shepard & Co., 128 U. S. 605, 612, 9 Sup. Ct. 168, 170 (32 L. Ed. 538) the court said:

"Until the patent is issued there is no property right in it; that is, no such right as the inventor can enforce. Until then there is no power over its use, which is one of the elements of a right of property in anything capable of ownership."

In Lyon v. Donaldson (C. C.) 34 Fed. 789, Judge Blodgett said:

"I do not think defendant should be mulcted in damages for machines sold prior to the issue of plaintiff's patent. At the time these sales were made, plaintiff had no patent, and, although we may assume from the proof that defendant knew when he made his machines that plaintiff was the inventor, yet, until plaintiff made his application for a patent, it was not certain that he would ever apply for or obtain one. Hence defendant cannot be said to have been a trespasser upon plaintiff's property before his (plaintiff's) patent was obtained."

In Brill v. St. Louis Car Co. (C. C.) 80 Fed. 909, the court said:

"Manifestly, therefore, there can be no invasion of the patentee's rights by any manufacture or use of the device, the subject-matter of the expected patent, prior to the date of the patent."

But it does not follow, from the fact that there can be no claim of damages for manufacturing the trucks before the issuance of the patent, that the trucks were set free from the monopoly of the patent, and could thereafter be used, without liability to the inventor. It is true that, if they were constructed with the knowledge and consent of the inventor and before the date of his application for patent, the appellants were free to use those specific trucks during the life of the patent, under Revised Statutes, § 4899 (Comp. St. 1916, § 9445), which provides:

"Every person who purchases of the inventor, or discoverer, or with his knowledge and consent constructs any newly invented or discovered machine, or other patentable article, prior to the application by the inventor or discoverer for a patent, or who sells or uses one so constructed, shall have the right to use, and vend to others to be used, the specific thing so made or purchased without liability therefor."

Among the cases applying the statute are Wade v. Metcalf, 129 U. S. 202, 9 Sup. Ct. 271, 32 L. Ed. 661; Dable Grain Shovel Co. v. Flint, 137 U. S. 41, 11 Sup. Ct. 8, 34 L. Ed. 618; Federal Const. Co. v. Park Improvement Co. (C. C.) 166 Fed. 128; Wade v. Metcalf (C. C.) 16 Fed. 130.

The letter written to the appellants by the inventor on November 17, 1914, sufficiently expressed consent to the construction of the trucks which were built by the Seattle Company. At that time the inventor evidently had no thought of applying for a patent. But at or soon after the date when the appellants gave their order to the Seattle Company the inventor in effect recalled his permission, and notified the appellants that the idea of the invention was his own, and that the Seattle Company could not build trucks embodying the same. Nor is it shown that any of the trucks had actually been constructed before February 25th, the date when the application for the patent was made. Under the facts as shown, therefore, the appellees were entitled to recover from the appellants the value of that which they took.

But the obstacle standing in the way of awarding a decree for such recovery upon the case made in the court below is that the appellees, upon whom the burden of proof rested, offered no evidence of an established license or royalty for the use of the invention, and no proof of any advantage or saving to the appellants from such use, and there was no basis for the assessment of the same. There was evidence of defects in the construction of the Seattle trucks, which lessened their utility. That being the situation, "it was permissible to show the value by proving what would have been a reasonable royalty, considering the nature of the invention, its utility and advantages, and the extent of the use involved." Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 648, 35 Sup. Ct. 221, 224 (59 L. Ed. 398); Hunt v. Cassiday, 64 Fed. 585, 587, 12 C. C. A. 316.

While the decree is affirmed in other respects, the decree for the payment of damages is reversed, and the cause is remanded to the court below, to be heard anew upon the evidence already taken and such further evidence as may be submitted, and for further proceedings in conformity with this opinion; the injunction against the use of the 20 pairs of trucks in question to be dissolved, upon payment by the appellants of the amount so to be found due to the appellees.